# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In Re:

JOHN J FINTON,                                Case No.:16-19222-LMI

      Debtor.                          Chapter 11
_____/

# SECOND AMENDED PLAN OF REORGANIZATION
## BY JOHN J. FINTON
## DATED July 10, 2018

### THE ASSOCIATES

**David Lloyd Merrill, Esq.**
1525 Prosperity Farms Road, Suite B
West Palm Beach, Florida 33403
Phone: +1.561.877.1111
Facsimile: +1.772.409.6749
**Attorneys for the Debtor**

# ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **John J. Finton** (the "Debtor") from cash flow from future earnings and exempt assets.

The Debtor, Finton Construction, Inc., and Michael Reeves ("Reeves") entered into a settlement agreement in regards to (1) ongoing litigation between the parties, and (2) resolution of disputes concerning the claim Reeves filed in the Debtor's Chapter 11 case (Claim 13-2) (the "Reeves Settlement Agreement"), which agreement was approved by the Bankruptcy Court on August 18, 2017 (DE #_318). A true and correct copy of the Reeves Settlement Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference. Nothing in this Plan is intended to alter, modify, impair, waive, release, relinquish or supersede in any way the parties' respective rights and obligations under the Reeves Settlement Agreement, which are expressly incorporated into and made a part of this Plan.

The Debtor has also entered into a settlement agreement with Michel Harouche ("Harouche") in regards to Claim 12-1 (the "Harouche Settlement Agreement"). The Harouche Settlement Agreement, together with the Amended Motion to Compromise Controversy with Michel Harouche [DE #236], and the Order Granting the Amended Motion to Compromise Controversy with Michel Harouche [DE #271] are also incorporated herein by reference and nothing in this Plan is intended to alter, modify, impair, waive, release, relinquish or supersede in any way the terms agreed to by the parties in the Harouche Settlement Agreement except as expressly set forth in Section 4.01 regarding the deadline for the Debtor to obtain confirmation of this Plan.

This Plan provides for **four classes of secured claims, three classes of unsecured claims, including one priority taxation claims class and one priority class for the payments to V. Finton, the debtor's former spouse and a General Unsecured Class that provides for all other claimants including payments to Reeves and Harouche in accordance with their respective settlement agreements**. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 76 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Class 1. | Class 1 consists of the Allowed Secured Claim of CIT Bank re: 986 Norumbega Drive |
| 2.02 | Class 2. | Class 2 consists of the Allowed Secured Claim of Wells Fargo re: 2013 Mercedes-Benz G550 |
| 2.03 | Class 3. | Class 3 consists of the Allowed Secured Claim of SunTrust Bank re: 2000 Mickelson 61' Yacht |
| 2.04 | Class 4. | Class 4 consists of the Allowed Secured Claim of John Hancock Pensions re: 401(k) Contract No.: 21999 |
| 2.05 | Class 5. | Class 5 consists of the Allowed Taxing Authority Claims |
| 2.06 | Class 6 | Class 6 consists of the Allowed Priority Claim of Victoria C. Finton |
| 2.07 | Class 7 | Class 7 consists of the Allowed General Unsecured Claims including Reeves and Harouche |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority Tax Claims. Each holder of a priority tax claim will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.04.1 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1** **Allowed Secured CIT Bank Claim re: 986 Norumbega Drive** | Unimpaired | Pursuant to the *Order Authorizing Debtor-in-Possession to Sell Property re: 986 Norumbega Drive, Monrovia, CA 91016 [DE#43]* found at DE #46, CIT Bank was paid in full for its secured lien on the subject property. The balance of proceeds remaining after the payment of CIT Bank and related closing costs were paid to the Debtor's former wife, Victoria C. Finton, up to and in accordance with the divorce settlement agreement in that case. No funds were received by the Debtor from this transaction. Any amounts due to Victoria Finton that have not been paid from the closing or by the Effective Date shall be treated as an allowed priority claim in Class 6 below. |
| **Class 2** **Allowed Secured Wells Fargo Claim re: 2013 Mercedes-Benz G550** | Unimpaired | Unless otherwise agreed to by the Debtor and Wells Fargo, on the Effective Date, the Class 2 Claim secured by the Debtor's 2013 Mercedes-Benz G550 shall be paid $68,459.00 LESS all payments made from inception for a current balance of $62,000.00 at 6.0% over 60 months resulting on payments of $1,198.63 starting on the Effective Date and payable on the first of each month thereafter until paid in Month 60. The Debtor will continue to insure this property in accordance with U.S. Trustee Guidelines. |
| **Class 3** **Allowed Secured SunTrust Bank Claim re: 2000 Mickelson 61' Yacht** | Unimpaired | Unless otherwise agreed to by the Debtor and SunTrust, on the Effective Date, the Class 3 Claim secured by the Debtor's 2000 61' Mickelson Yacht, which is the Debtor's homestead, shall be paid in accordance with the terms of the original note and security agreement. The Debtor will continue to insure this property in accordance with U.S. Trustee Guidelines. |
| **Class 4** **Allowed Secured John Hancock Pensions Claim re: 401(k) Contract No.: 21999** | Impaired | Unless otherwise agreed to by the Debtor and John Hancock, on the Effective Date, Class 4 shall receive $45,000.00, paid in 60 monthly payments of $869.98 at the rate of 6.0% interest. |
| **Class 5** **Allowed Taxing Authority Claims** | Impaired | Unless otherwise agreed to by the Debtor and the Internal Revenue Service, on the Effective Date, Class 5 shall receive $34,300.61, paid in 48 monthly payments of $774.48 at the rate of 4.0% interest EXCEPT THAT in the event amended tax returns are filed such amounts reflected as due and owing will be paid in accordance with such returns over the same period. Except as set forth herein, on the Effective Date, all the Allowed Taxing Authority Claims are current and will be paid as they come due in compliance with 11 U.S.C. §1129(a)(9). |
| **Class 6** **Allowed Priority Unsecured Claim of Victoria C. Finton** | Impaired | Unless otherwise agreed to by the Debtor Victoria Finton, the Debtor shall pay Victoria Finton $127,000.00 in full and complete settlement of her Final Judgment ("Settlement Amount"). The Settlement Amount shall be payable in 24 consecutive monthly installments of $4,000.00 with a final balloon payment of $31,000.00 in month 25. Default provisions are in place that, if violated, can cause the entire amount of Vitoria Finton's final judgment to be due. For all details related to the settlement please refer to the |

| | | |
|---|---|---|
| | | Settlement Agreement and order approving the same attached hereto as Exhibit E. **The Debtor will sell exempt or unencumbered assets as necessary to satisfy the balloon payment in Month 25, and as is fully set forth below in Exhibit b, the Debtor currently has sufficient assets to do so.** The Class 6 Claim is impaired. |
| Class 7<br>**Allowed General Unsecured Claims** | Impaired | **Note that any payments made to this class are deemed to be payments made to the unsecured class in Finton Construction, Inc., Debtor in case No.: 16-19221-LMI and *vice versa*, meaning there will be no duplication of payments as between the Debtor herein and FCI.** Class 7 Claims total $4,602,932.10 (after the projected objections analysis and results), which will be paid a total of $3,491,350.08 payable $20,000.00 monthly beginning in month 1 through Month 72 of the Plan EXCEPT as provided for in two stipulated settlement agreements as set forth herein and for which the approved stipulated settlement agreements shall control. Pursuant to the Reeves Settlement Agreement, Claim 13-2 is allowed as a general unsecured claim in the amount of $5,177,094.00. Pursuant to a judgment entered by stipulation in Adv. Case No. 16.01566-BCK-LMI-A (the "Reeves 523 Judgment"), Reeves' claim is also excepted from discharge. Under the Reeves Settlement Agreement, the Debtor is required to make monthly payments of no less than $12,000.00 per month, beginning October 1, 2017. The monthly payment obligation may be funded by the Debtor and/or FCI using any combination of: (i) property of the Debtor and/or FCI bankruptcy estates, and (ii) all other property of the Debtor and FCI that is not included in their respective bankruptcy estates at the sole discretion of said parties. For so long as Reeves receives at least $12,000.00 per month from the Debtor (alone or in combination with FCI), Reeves has agreed to forbear from taking action to enforce the Reeves 523 Judgment. If the Debtor (alone or in combination with FCI) timely and fully tenders the sum total of his monthly payments of $12,000 for 45 months ($540,000.00) *and*, in addition, pays Reeves the sum of $1,460,000.00 – resulting in total payments to Reeves of the sum of $2,000,000 on or before the first day of the forty-fifth month following October 1, 2017, Reeves' allowed claim (Claim 13-2) and the Reeves 523 Judgment shall be deemed fully satisfied as provided in the Reeves Settlement Agreement. If the Debtor (alone or in combination with FCI) timely and fully tenders the sum total of his monthly payments of $12,000.00 per month for 90 months ($1,080,000.00) *and*, in addition, pays Reeves the sum of $1,320,000.00 – resulting in total payments to Reeves of the sum of $2,400,000.00 on or before the first day of the ninetieth month following October 1, 2017 – Reeves' allowed claim (Claim 13-2) and the Reeves 523 Judgment shall be deemed fully satisfied as provided in the Reeves Settlement Agreement. If the Debtor does not timely fully perform his obligations under the Reeves Settlement Agreement, Reeves is entitled and allowed to initiate all such |

|  |  | action and proceedings as may be appropriate to enforce and execute on the Reeves 523 Judgment. To the extent that there is any conflict or inconsistency between the Plan and the Reeves Settlement Agreement, the Reeves Settlement Agreement shall control. |
|---|---|---|
|  |  | The second claim resolved by the Debtor is Claim 12-1 of Michel Harouche. That claim has been reduced from $4.6 Million to $1.1 Million as set forth in this Court's *Order Granting Amended Motion to Approve Settlement Agreement* [DE #236].. Pursuant to a judgment entered by stipulation in Adv. Case No. 16-01577-LMI (the "Harouche 523 Judgment), Harouche's claim is also excepted from discharge. The Harouche Settlement Agreement between the Debtor, Finton Construction, Inc. and Harouche provides an outside date of November 15, 2017 for the Debtor to confirm a plan of reorganization. Because the Debtor did not meet that deadline, Harouche has the absolute right to require conversion or dismissal of the case. Harouche agrees to provide a limited modification of the Harouche Settlement Agreement to the extent that a plan of reorganization acceptable to Harouche is approved no later than September 1, 2018. With respect to Harouche's treatment under the Plan, Harouche will be paid $6,000 per month during the term of the Plan. Except as set forth specifically herein with respect to the deadline for confirming a plan of reorganization, all of Harouche's rights under the Harouche Settlement Agreement are reserved. These rights include, but are not limited to, paragraph 10.F. of the Harouche Settlement Agreement, which provides: "If Finton or FCI default under either of the Plans, Harouche shall have no obligation to forbear on the exercise of any of his rights and remedies with respect to the Judgment." |
|  |  | The Reeves and Harouche claims, as discussed above, are deemed impaired and therefore are entitled to vote to accept or reject the Plan. |
|  |  | The balance of claims herein is anticipated to be $373,000.00. These claims shall receive a *pro rata* share of $2,000.00 monthly starting upon the Effective date and payable on the first of each month thereafter for 72 months with a balloon payment in month 73 of $229,000.00. NOTE THAT PAYMENTS MADE TO THIS CLASS FOR DEBTS OWED ALSO BY FINTON CONSTRUCTION, INC., DEBTOR IN CASE NO.: 16-19221-LMI PENDING BEFORE THIS COURT ARE ONE AND THE SAME AND WILL NOT BE DUPLICATED THEREIN. A PAYMENT MADE FOR THE BENEFIT OF A CREDITOR HEREIN REPRESENTS AND SATISFIES (IN ACCORDANCE WITH THE ABOVE) A CREDITOR IN THAT CASE AS WELL. The Debtor is, as required by 11 U.S.C. §1129(a)(15), committing his disposable income to the Plan over a six year period as is more fully detailed in Exhibit C below. In the event the holder of an allowed unsecured claim objects to confirmation of the |

|  |  | plan, the value of the property to be distributed under the plan will not be less than the projected disposable income of the debtor (as defined in 11 U.S.C. §1325(b)(2)) to be received during the six year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer. In the event any secured or administrative claims are paid in full prior to month 73, payment in the amount of the secured or administrative claim will be paid to general unsecured commencing the month after such full payment and in an amount equaling at least 90% of the prior payment made to such secured or administrative claimant. |
|---|---|---|

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor have scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01   Assumed Executory Contracts and Unexpired Leases.

(a)   The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

**None.**

(b)   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the 120th day after the effective date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

### 7.01 General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 7.02 Continued Corporate Existence

Reorganized Debtor, individual, shall after the Effective Date continue with all powers vested in individuals under the laws of the State of Florida and without prejudice to any right under Florida law; and, following the Effective Date, Reorganized Debtor may operate his business free of any restrictions imposed by the Bankruptcy Code, the bankruptcy Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.

### 7.03 The Reorganized Debtor

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of Equity Interests. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

### 7.04 Funding

Funds to be used to make cash payments under the Plan shall derive from the future earnings of the Debtor.

### 7.05 Effectiveness of Instruments and Agreements

On the Effective Date, all documents issued in this case or pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 7.06 Corporate Action

As the Debtor is a natural person, no corporate action is required.

### 7.07 Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

### 7.08 Administration After the Effective Date

After the Effective Date, the Reorganized Debtor may operate his business, and may use, acquire, and dispose of their property, free of any restrictions of the Code and Rules.

### 7.09 Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date with the exception to any enforcement action by Reeves in regards to any of the terms contained in the Reeves Settlement Agreement and Reeves' right to pursue enforcement of his 523 Judgment and to any enforcement action by Harouche in regards to any of the terms contained in the Harouche Settlement Agreement.

### 7.10 Revesting of Assets

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtor, including, without limitation, the Actions shall revest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

### 7.11 Causes of Action

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtor and Debtor in Possession, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Reorganized Debtor, and the Reorganized Debtor and/or the Plan Administrator, as the case may be, shall have the authority to commence and prosecute such Actions for the benefit of the Estate. Specifically, the Reorganized Debtor, shall continue to prosecute any Action pending on the Effective Date. Further, section 547 of the Code enables a debtor in possession to avoid transfers to a creditor, based upon an antecedent debt, made within ninety (90) days of the petition date, which enables the creditor to receive more than it would under a liquidation. Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value. The Reorganized Debtor and/or the Plan Administrator, as the case may be, will analyze payments made by the Debtor to creditors within ninety (90) days (or in

the case of insiders, one year) before the Commencement Date (as set forth in item 3(a) in the Debtor's Statement of Financial Affairs) to determine which such payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions.

After the Effective Date, the Reorganized Debtor shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court. Prior to Confirmation, the Debtor shall file a schedule of potential Avoidance Actions, if any.

### 7.12 Injunction Related to Discharge

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim. Such injunctions shall extend to successors of the Debtor and his respective properties and interests in property. Reeves and Harouche are not enjoined or otherwise estopped from taking any action bargained for and agreed to in the Reeves Settlement Agreement or in the Harouche Settlement Agreement, including but not limited to taking such action and initiating such proceedings as may be appropriate to enforce and execute on their respective 523 Judgments should the Debtor fail to make timely or full payments as required under the aforementioned settlement agreements and this Plan.*

### 7.13 Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, with the exception of Reeves in enforcing his rights under the Reeves Settlement Agreement and Harouche enforcing his rights under the Harouche Settlement Agreement, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

### 7.14 Votes Solicited in Good Faith

The Debtor has, and upon confirmation of the Plan shall be deemed to have,

solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01   Definitions and Rules of Construction.   The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02   Effective Date of Plan. The effective date of this Plan is the fourteenth day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03   Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05   Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07   Conflict. To the extent any terms contained in this Plan conflict with the Reeves Settlement Agreement or the Harouche Settlement Agreement or the V. Finton Settlement Agreement, the terms contained in the Reeves Settlement Agreement shall control as to Reeves, the terms contained in the Harouche Settlement Agreement shall control as to Harouche, and the terms contained in the V. Finton Settlement Agreement and Order approving the same shall control as to V. Finton.

## ARTICLE IX
## DISCHARGE

9.01.   Discharge.   Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and

equity interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and equity interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. A discharge entered in this case or in any other case shall not discharge the Debtor from the Reeves 523 Judgment unless and until the terms of the Reeves Settlement Agreement are fully and timely satisfied. A discharge entered in this case or in any other case shall not discharge the Debtor from any of the Claims arising in or as a result of the Harouche Settlement.

By: _____
John. J. Finton

**THE ASSOCIATES**

By: */s/ David Lloyd Merrill, Esq.*
David Lloyd Merrill, Esq.
1525 Prosperity Farms Road, Ste B
West Palm Beach, Florida 33403
Phone: +1.561.877.1111
**Attorneys for John J. Finton**